# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KENNETH EUGENE PETERS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-512-CV-W-NKL |
| ) | |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This wrongful death case was originally filed by Plaintiffs Kenneth Eugene Peters, Elaine Peters, Brennan Peters and Jessie M. Perkins in the Circuit Court of Jackson County, Missouri. On June 22, 2006, Defendants Union Pacific Railroad Company and Edward T. Krawczyk, III, removed the case to federal court. Defendants argue that the Court has original jurisdiction over Plaintiffs' claims because the Plaintiffs' claims are completely preempted by the Federal Railroad Safety Act ("FRSA") and the Locomotive Inspection Act ("LIA"). In the alternative, Defendants argue the Court has jurisdiction because resolution of Plaintiffs' state law claims requires the Court to address a substantial federal question. Pending before the Court is Plaintiffs' Motion to Remand [Doc. # 7]. For the reasons set forth herein, the motion will be granted.

**I.     Background**

Plaintiffs Kenneth Eugene Peters, Elaine Peters, Brennan Peters and Jessie M.

1

Perkins are the father, mother, son and daughter, respectively, of Kenneth Chad Peters. On November 12, 2005, Kenneth Chad Peters was killed when his vehicle collided with a Union Pacific train operated by Krawczyk. On May 2, 2006, Plaintiffs filed a one-count wrongful death Petition for Damages in the Circuit Court of Jackson County, Missouri. In their Petition, Plaintiffs allege Defendant Union Pacific breached its duty to clear and maintain its right-of-way pursuant to common law and Missouri Statute 389.665. Also, Plaintiffs allege that Defendants operated the train at an excessive rate of speed given the local conditions, failed to keep a careful lookout, failed to effectively operate an audible warning device and failed to stop or slow to avoid colliding with the decedent's vehicle.

**II. Discussion**

The Defendants contend that the Court has subject matter jurisdiction because the Plaintiffs' Complaint raises a federal question either because federal law is essential to the resolution of Plaintiffs' state law claims or because Plaintiffs' state law claims are completely preempted by FRSA and the LIA.

**A. Complete Preemption**

Federal question jurisdiction is proper when a plaintiff presents a federal question on the face of her well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425 (1987) (citations omitted). Federal questions raised in a defendant's answer cannot be the basis for federal question jurisdiction. *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983). Thus, an ordinary preemption defense cannot be the basis for federal question jurisdiction.

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).

Notwithstanding the well-pleaded complaint rule, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (quotation omitted) (noting that the artful pleading doctrine is an "independent corollary" to the well-pleaded complaint rule). For example, even where no federal question appears on the face of a plaintiff's complaint, removal is still upheld if federal law completely preempts the plaintiff's state-law claim. *Id*. (citation omitted); *Caterpillar*, 482 U.S. at 393 ("[A]ny claim purportedly based on [a] pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law."). A completely preemptive statute, however, is a rarity. *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) ("To be completely preemptive, a statute must have extraordinary preemptive power, a conclusion courts reach reluctantly."). In all preemption cases, but especially in areas long occupied by state law, there is a presumption against preemption "unless [preemption] was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *also see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

The FRSA's express preemption and savings provision is found in 49 U.S.C. § 20106:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the

3

> Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–
> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
> (3) does not unreasonably burden interstate commerce.

The Defendants appear to argue that all state law claims based in part on FRSA regulations, are completely preempted as a result of this preemption provision. To reach this conclusion they rely on *Lundeen v. Canadian Pacific Ry. Co.*, 447 F.3d 606 (8th Cir. 2006); *Peters v. Union Pacific R.R. Co.*, 80 F.3d 257 (8th Cir. 1996); *Olberding v. Union Pacific R.R. Co.*, No. 06-0041-CV-W-FJG (W.D. Mo. August 7, 2006); *Gillenwater v. Burlington Northern & Santa Fe Ry. Co.*, 2006 WL 1699362 (E.D. Mo. June 13, 2006). None of these cases support the Defendants' argument. *Lundeen*, the case relied on by the two district court opinions, specifically acknowledges *Chapman v. Lab One*, 390 F.3d 620, 626-27 (8th Cir. 2004), where the Eighth Circuit, three years earlier, had found that the FRSA did not preempt a common law claim for negligent drug testing. Indeed, the United States Supreme Court, in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 672 (1993), held that the FRSA does not preempt claims for failing to maintain an adequate warning device where no federal funds were used to purchase them. Most importantly, 49 U.S.C. § 20106, the FRSA preemption statute, specifically states that some state claims, those focused on local conditions, will survive even if the Secretary of

4

Transportation "has adopted a regulation or order covering the subject matter of the state requirement." *Id.* The presence of such a savings clause is evidence that Congress did not intend to preempt all claims based in part on the FRSA, because an "express preemption clause gives rise to an inference that implied preemption is foreclosed." *See Chapman*, 390 F.3d at 627.

Defendants seem to argue that *Gillenwater* stands for the proposition that the savings clause in 49 U.S.C. § 20106 is inapplicable because the District Judge, in *Gillenwater*, stated that he had not found "an applicable savings clause in my own research." *Gillenwater*, 2006 WL 1699362 at *2. The Court does not read *Gillenwater* so broadly. 49 U.S.C. § 20106 is obviously applicable; its express language makes it applicable, as does the United States Supreme Court opinion in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993).

Although the FRSA does not preempt all state claims related to railroad safety, it clearly preempts some. To determine which claims are completely preempted, the Court must consider not only Congressional intent but also the intent of the Secretary of Transportation, because 49 U.S.C. § 20106 delegates to the Secretary of Transportation the authority to preempt by regulation state law claims which are related to the area occupied by regulation. However, the Secretary of Transportation cannot preempt claims which are covered by the savings clause in 49 U.S.C. § 20106. That would be contrary to the intent of Congress.

In this case, Defendants argue that federal law preempts four of Plaintiffs' claims:

5

(1) that Defendants' train operated at an excessive speed, (2) that Defendants failed to clear visibility obstructions, (3) that the crossing had inadequate warning devices, signs and markings, and (4) that Defendants failed to sound an audible warning.

### 1. Excessive Speed

Defendants assert that the FRSA preempts Plaintiffs' excessive speed claim. If the train was traveling within the federal speed limit, then the FRSA preempts any state or common law claim as to excessive speed. *Easterwood*, 507 U.S. at 675. The *Easterwood* court did not address the FRSA's preemptive effect on claims "for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." *Id.* at 675 n. 15. Other courts hold that *Easterwood*'s excessive speed holding does not preempt a claim for failure to slow or stop to avoid a specific individual hazard. *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 242 (Mo. banc 2001) (unwavering approach by a vehicle constitutes specific, identifiable hazard) (citing *Bashir v. National R.R. Passenger Corp.*, 929 F. Supp. 404, 412 (S.D. Fla. 1996) (no preemption if child is standing on track). *Anderson v. Wisconsin Central Transp. Co.*, 327 F. Supp.2d 969, 978-79 (E.D. Wis. 2004); *Hightower v. Kansas City Southern Ry. Co.*, 70 P.3d 835, 846-49 (Okla. 2003); *Shaup v. Frederickson*, 1998 WL 726650 at *11 (E.D. Pa. 1998); *Bashir v. National R.R. Passenger Corp.*, 929 F. Supp. 404, 412 (S.D. Fla. 1996), *aff'd* 119 F.3d 929 (11th Cir. 1997); *Central Georgia R.R. Co. v. Markert*, 410 S.E.2d 437, 439 (Ga. App. 1991).

In *Alcorn*, the plaintiff, a passenger in an automobile that collided with an Amtrak

train, alleged that Amtrak was negligent for failing to reduce its speed. The court indicated that the train was traveling below the maximum speed permitted by the federal regulations. *Id.* at *9. The court noted that the decision in *Easterwood* did not preempt a common law claim based on the duty of a train crew to slow down when a specific, individual hazard exists. *Id.* at *10.

The court explained that "[a]t least one court postulated an example of an 'obvious case,' somewhat similar to the facts here, of an individual hazard where an engineer sees a stranded motorist on a crossing, but negligently fails to stop or slow the train to avoid the collision." *Id.* Thus, the court concluded that a specific, individual hazard "can include the 'unwavering approach' of a vehicle that the train crew either knew or should have known about." *Id.* (citing *Griffin v. Kansas City Southern Ry. Co.*, 965 S.W. 2d 458, 461 (Mo. Ct. App. 1998)).

In this case, Plaintiffs allege that Defendants operated the train at an excessive speed "under the existing local hazardous conditions and specific individual hazards presented at this crossing." [Petition ¶ 28D(1)]. Plaintiffs also allege that the individual specific hazards were known, or should have been known, to the Defendants. [Petition ¶ 28D(2)]. Plaintiffs specifically allege that the unwavering approach of Chad Peters to the crossing and the imminent danger of the train colliding with him was a local safety hazard. Plaintiffs' claim that Defendants operated the train at an excessive speed given the known specific individual hazards is not preempted by the FRSA.

### 2. Visibility Obstructions: Vegetation

Defendants assert that the FRSA preempts Plaintiffs' claim that Defendants failed to adequately clear the "brush, trees, debris and other visual obstructions and visual clutter" within the crossing and right-of-way. [Petition ¶ 28B(2)]. Vegetation on railroad property which is on or immediately adjacent to the tracks must be kept under control. *See* 49 C.F.R. § 213.37. And, it is well established that 49 C.F.R. § 213.37 preempts state regulation of vegetation on or immediately adjacent to the tracks. *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1554 (11th Cir. 1991), *aff'd*, 507 U.S. 658 (1993); *Missouri Pacific R.R. Co. v. Railroad Comm'n of Texas*, 833 F.2d 570, 577 (5th Cir. 1987).

In this case, Plaintiffs have alleged that vegetation in the crossing and right-of-way was out of control. The crossing and right-of-way are not areas on or immediately adjacent to the tracks. *Missouri Pacific R.R. Co.*, 833 F.2d at 577 (noting that "[r]ight-of-way property can and often does extend several yards from the [tracks]" and that section 213.37 does not cover vegetation which is on the right-of-way but not immediately adjacent to the tracks). Plaintiffs have not alleged that vegetation on or immediately adjacent to the tracks was out of control. And, neither party has alleged that the whole of the right-of-way and crossing is adjacent to the tracks. Therefore, Plaintiff's claim that the crossing and right-of-way were not adequately free of vegetation is not preempted. *See, e.g., Shanklin v. Norfolk Southern Ry. Co.* 369 F.3d 978, 988 (6th Cir. 2004); *Strozyk v. Norfolk Southern Corp.*, 358 F.3d 268, 276-77 (3d Cir. 2004); *Clark v. Illinois Central R.R. Co.*, 794 So.2d 191, 196 (Miss. 2001); *Missouri Pacific R.R. Co. v. Mackey*, 760

8

S.W.2d 59, 64 (Ark. 1988), *cert. denied*, 490 U.S. 1067 (1989); *O'Bannon v. Union Pacific R.R. Co.*, 960 F. Supp. 1411, 1422-23 (W.D. Mo. 1997).

### 3. Warning Devices, Signs and Markings

Defendants assert that FRSA regulations preempt Plaintiffs' claim that the signs, markings and warning devices protecting the crossing were inadequate. But, the only FRSA regulations pertaining to warning signs with preemptive effect are 23 C.F.R. §§ 646.214(b)(3) and (4), and sections 646.214(b)(3) and (4) only have preemptive effect if the warning devices were installed with federal funds. *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 352-54 (2000). Plaintiffs have alleged that no federal funds were involved. Defendants have not refuted the Plaintiffs' allegation that this issue was resolved against the Defendants in an earlier lawsuit. Instead, Defendants refer the Court to a statement of facts from a different case which references (but does not attach) an affidavit by a man who swears that federal funds were used to install the warning devices at issue here. This is too slim a reed to justify federal subject matter jurisdiction. FRSA regulations do not preempt Plaintiffs' claim that the state funded signs, markings and warning devices protecting the crossing were inadequate.

### 4. Audible Warning

Defendants assert that the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.*, preempts Plaintiffs' claim that Defendants failed to sound an audible warning. The LIA regulates "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier v. Atlantic Coast Line R.R. Co.*,

9

272 U.S. 605, 611, 47 S. Ct. 207 (1926). Plaintiffs must allege a defect or inadequacy in the audible warning device itself for the LIA to preempt the claim. Plaintiffs have not done this. Instead, Plaintiffs have alleged that the Defendants "failed to utilize the warning device properly." [Pltf's Mot. at 15]. Because Plaintiffs have made no claim that the equipment itself was defective or inadequate, the LIA does not preempt Plaintiffs' claim that Defendants failed to sound an audible warning. *See Anderson v. Wisconsin Central Transportation Co.*, 327 F. Supp.2d 969, 980 (E.D. Wis. 2004); *accord Estate of Strandberg v. Chicago, Central & Pac. R.R. Co.,* 284 F. Supp.2d 1136, 1143 (N.D. Iowa 2003); *Clark v. Illinois Central R.R. Co.*, 794 So.2d 191, 196 (Miss. 2001); *Lubben v. Chicago, Central & Pac. R.R. Co.*, 563 N.W.2d 596, 600 (Iowa 1997); *see also Strozyk v. Norfolk Southern Corp.*, 358 F.3d 268, 274 n. 5 (3d Cir. 2004) (noting that the defendant railroad in *Shanklin* conceded that a claim alleging failure to "sound the horn in a timely fashion" was not preempted).

Because none of Plaintiffs' claims are completely preempted, the Court's subject matter jurisdiction cannot rest on the doctrine of complete preemption.

      **B.**    **Substantial Federal Question Doctrine**

Defendants also assert that Plaintiffs' claims are properly removed pursuant to the substantial federal question doctrine because Plaintiffs' state law claims allege violations of federal law. In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), the United States Supreme Court stated that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there

should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817.[1]

The Supreme Court clarified its *Merrell Dow* ruling in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005). The court held that a state law claim may raise a federal question even when there is no private cause of action for the violation of the federal statute alleged. *Grable* established a two part test to determine when such a claim would be deemed to "arise" under federal law. "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 125 S. Ct. at 2368. The Supreme Court, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121 (2006), gave further clarification to *Grable*, noting that it involved a "nearly 'pure issue of law . . . that could be settled once and for all and therefore would govern numerous tax sale cases.'" *Id.* at 2137 (quoting Hart and Wechsler, 65 (2005 Supp.).

Defendants argue that *Grable* requires the Court to find that Plaintiffs' Complaint places a substantial federal question in dispute because it alleges that the Defendants violated the FRSA. They then contend that there is a need for uniform application of the

---

[1] There is no private cause of action for violations of the FRSA. *Chapman v. Lab One*, 390 F.3d 620, 629 (8th Cir. 2004); *also see Gaming Corp. of American v. Dorsey & Whitney*, 88 F.3d 536, 550 (8th Cir. 1996).

11

FRSA which is best done in the federal courts, and this will not adversely impact the division of labor between state and federal courts because railroad crossing claims will not substantially increase the jurisdiction of the federal courts.

To date, all case law is contrary to the Defendants' position. *See Glorvigen v. Cirrus Design Corp.*, 2006 WL 399419 (D. Minn. 2006); *Sullivan v. BNSF Ry. Co.*, ___ F. Supp.2d ___, 2006 WL 2390330 (D. Ariz. 2006); *Connolly v. Union Pacific R.R. Co.*, ___ F. Supp.2d ___, 2006 WL 2794862 (E.D. Mo. 2006), and cases cited therein.

While bringing railroad crossing cases into the federal court system would have a small impact on the division of labor between the state and federal court system, the same argument that Defendants rely on to justify federal question jurisdiction here is applicable to virtually every case where violation of a federal regulation is raised as evidence to determine the appropriate standard of care in a state tort action. This approach was specifically rejected in *Merrell Dow* and *Grable* and is a very narrow exception to the rule because the core issue there was whether a federal agency had violated federal law. Here, it is alleged that a private party violated federal law. To find federal question jurisdiction under these circumstances would open the floodgates to the garden variety torts that the United States Supreme Court, in *Merrill Dow*, specifically said should not be in federal court.

### III. Conclusion

Accordingly, it is hereby

(1) ORDERED that the Plaintiffs' Motion to Remand [Doc. # 7] is GRANTED.

The above captioned case is REMANDED to the Circuit Court of Jackson County, Missouri.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

DATE:  October 5, 2006  
Jefferson City, Missouri